**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 25-cv-00182-NYW-TPO

LEA SINGH,

Plaintiff,

v.

AMERICAN STRATEGIC INSURANCE CORP.,

Defendant.

---

## ORDER ON MOTION TO DISMISS

---

This matter is before the Court on Defendant's Motion to Dismiss the Amended Complaint (or the "Motion"). [Doc. 53, filed February 17, 2026]. This Court has reviewed the Motion, the applicable case law, and the entire docket. For the reasons set forth herein, the Motion to Dismiss is respectfully **DENIED**.

## BACKROUND

The Court draws the following facts from the First Amended Complaint (the "Amended Complaint"), [Doc. 48], and presumes they are true for the purposes of this Order. Plaintiff Lea Singh ("Plaintiff" or "Ms. Singh") owns rental property located at 12174 E. 2nd Dr., Aurora, CO 80011 (the "Property"). [*Id.* at ¶ 7]. Between January 12 and January 16, 2024, a polar vortex occurred, resulting in several days where the temperature did not exceed 32 degrees Fahrenheit at the Property. [*Id.* at ¶¶ 2, 19–25, 28]. On January 15, 2024, plumbing in the Property froze, resulting in a burst pipe that caused "extensive damage to the interior of the property." [*Id.* at ¶¶ 3, 29]. The frozen plumbing and resulting damage occurred because Public Service Company of Colorado

d/b/a Xcel Energy ("Xcel"), which provided gas and electrical services to the Property, stopped services on January 15, 2024. [*Id.* at ¶¶ 3, 25]. Services were allegedly terminated due to an outstanding balance. [*Id.* at ¶¶ 25–26].

Plaintiff had communicated with Xcel regarding the unpaid balance prior to the services being shut off. *See* [*id.* at ¶¶ 9–13]. On October 3, 2023, Ms. Singh found out from Xcel that the tenant that lived in the Property had an outstanding bill, but she was prohibited from knowing the amount of the bill, when the last payment was made, or the average monthly cost of services. [*Id.* at ¶¶ 9–10]. During this same conversation, Ms. Singh confirmed that she was not responsible for the outstanding balance despite owning the Property—the tenant remained responsible even after they moved out. *See* [*id.* at ¶ 11 (Xcel stated "If [the current tenants] don't pay the bill and they move out . . . this bill goes with the tenant," to which Ms. Singh confirmed "[i]t follows the tenant")]. Ms. Singh understood this call to mean she "would not be responsible for" the unpaid bill, nor would she "suffer any detriment" caused by the unpaid bill. [*Id.* at ¶ 12]; *see also* [Doc. 55 at 3]. On November 2, 2023, Ms. Singh informed Xcel that her tenant had left the Property and sought to end the tenant's association with the Xcel account associated with the Property. [Doc. 48 at ¶ 15]. Specifically, Ms. Singh said "we need to **put a stop** on there" because she believed Xcel "needed her to put a stop on her tenant's account associated with" the Property. [*Id.* at ¶¶ 15–16]; *see also* [Doc. 55 at 3–4].

Service to the Property continued through November and December 2023. [Doc. 48 at ¶ 17]. Service remained on in "early to mid-January" while Ms. Singh performed repairs to the Property. [*Id.* at ¶ 18]. Upon information and belief, service ultimately shut off on January 15, 2024, because the "former tenants [sic] failed to pay their utility bill."

[*Id.* at ¶ 26]. Xcel shut off utility services despite the Colorado Public Utilities Commission Rule prohibiting service discontinuance when the National Weather Service "[predicts] that the temperature will be 32 degrees Fahrenheit or lower at any time during the following 24 hours." [*Id.* at ¶ 27]; Colo. Code Regs. § 723-4:4407 (2026). On January 15, 2024, the temperature "never exceeded 32 degrees Fahrenheit" at the Property. [Doc. 48 at ¶ 28].

The Property is covered by a Condo Protection Policy (the "Policy") sold to Plaintiff by American Strategic Insurance Corporation ("Defendant" or "ASIC"). [*Id.* at ¶ 7]. The Policy excludes coverage for loss caused by "freezing of a plumbing . . . system," unless the insured "used reasonable care to: 1) Maintain heat in the building."[1] [Doc. 53-1 at 14]. Ms. Singh timely reported the damage to the Property to ASIC, who confirmed that the loss occurred after Xcel shut off utility services due to the outstanding utility bill from the tenant. [*Id.* at 30–32]. ASIC subsequently denied coverage, as they "interpreted Ms. Singh's communications to Xcel as a request to stop utility service," ultimately concluding

---

[1] In their briefing on the Motion to Dismiss, the Parties rely on the Policy, which was referenced in, but not attached to, the Amended Complaint. *See* [Doc. 53-1; Doc. 55-1]; *see generally* [Doc. 48 at ¶¶ 7, 36–40, 42 (referencing the Policy)]. Typically, a court may not consider documents outside of the complaint in considering a motion to dismiss unless it first converts the motion into a motion for summary judgment. *Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, the court may consider materials outside of the complaint without converting the motion if a document is central to the plaintiff's claims, is referenced in the complaint, and if the parties do not dispute the document's authenticity. *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). The decision to consider such materials is within the court's discretion. *Jackson*, 952 F.2d at 1261. Here, the Policy is referenced in the Amended Complaint, *see* [Doc. 48 at ¶¶ 7, 36–40, 42], and Plaintiff's claims are based on denial of "payment of covered insurance benefits" [*id.* at ¶ 39]. Moreover, neither Party disputes the authenticity of the Policy; in fact, each Party relies upon the Policy in support of its arguments, and each Party independently attaches the Policy as an exhibit to its briefing. [Doc. 53 at 7; Doc. 55 at 6, 9; Doc. 53-1; Doc. 55-1]. Accordingly, the Court may consider the Policy in issuing this Opinion.

that Ms. Singh failed to use reasonable care to maintain heat in the building. [*Id.* at ¶ 34]; *see also* [Doc. 53 at 9; Doc. 56 at 2].

## PROCEDURAL HISTORY

Plaintiff filed her initial Complaint on November 27, 2024 in the District Court of Denver County, alleging two claims: (1) breach of contract and (2) Violation of Colo. Rev. Stat. § I0-3-1115 & Relief Under Colo. Rev. Stat. § 10-3-1116. *See* [Doc. 4]. ASIC removed the action to federal court on January 17, 2025. *See* [Doc. 1]. Following limited discovery, including the production of recorded telephone conversations between Plaintiff and Xcel, the Court permitted Plaintiff to file an Amended Complaint. *See* [Doc. 47]. The instant Amended Complaint alleges the following three claims: (1) breach of contract ("Claim I"); (2) bad faith breach of insurance contract ("Claim II"); and (3) Violation of Colo. Rev. Stat. § I 0-3-1115 & Relief Under Colo. Rev. Stat. § 10-3-1116 ("Claim III"). [Doc. 48 at 7–10]. Defendant filed its Motion to Dismiss the Amended Complaint on February 17, 2026. *See generally* [Doc. 53]. Specifically, Defendant seeks to dismiss all three claims for failure to allege any facts demonstrating that the exception to the freezing coverage exclusion applies and for failure to "plead any nonconclusory facts supporting the required element of unreasonable conduct for each of [Plaintiff's] bad faith claims." [*Id.* at 3]. Because the Motion to Dismiss is fully briefed and ripe for adjudication, [Doc. 55; Doc. 56], this Court considers the Parties' arguments below.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and

view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

ASIC seeks dismissal of all three claims against it. [Doc. 53 at 3]. Because this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332, *see* [Doc. 48 at ¶ 8], and because the Parties do not dispute its application, [Doc. 53 at 6; Doc. 55 at 9], the Court applies the substantive law of Colorado, *Barrett v. Tallon*, 30 F.3d 1296, 1300 (10th Cir. 1994); *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption"). The Court addresses each claim in turn:

## I. Breach of Contract

Claim I asserts that ASIC breached its contract by "denying payment of covered insurance benefits." [Doc. 48 at ¶ 39]. To state a breach of contract claim under Colorado law, a plaintiff must allege facts establishing: "(1) the existence of a contract, (2) performance by the plaintiff or some justification for nonperformance, (3) failure to perform the contract by the defendant, and (4) damages." *Lawson v. Heartland Payment Sys., LLC*, 548 F. Supp. 3d 1085, 1095 (D. Colo. 2020). The Policy agreement between Plaintiff and Defendant contains a provision stating, in pertinent part:

> **a.** [Coverage excluded for loss caused by] [f]reezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion <u>does not apply</u> if you have used reasonable care to:
>
> > **(1)** Maintain heat in the building; or
> > **(2)** Shut off the water supply and drain all systems and appliances of water.

[Doc. 53-1 at 14; Doc. 55-1 at 14 (emphasis added)].

Defendant asks for the Court to dismiss Plaintiff's claim due to a failure to allege facts demonstrating that the exception to the coverage exclusion applies. *See* [Doc. 53 at 2]. Specifically, Defendant asserts that the Amended Complaint "contains no factual allegations describing what 'reasonable efforts' Plaintiff purportedly undertook." [*Id.* at 8]. In response, Plaintiff argues that she took reasonable care to maintain heat in the property. [Doc. 55 at 8]. For the reasons set forth below, the Court concludes that Claim I may not be dismissed at this juncture.

The primary question before this Court is whether Plaintiff has plausibly alleged sufficient facts to allow a factfinder to conclude that she used reasonable care to maintain

heat in the building such that the exception to the exclusion applies to the loss, warranting coverage. *See* [Doc. 53 at 7 ("Here, the critical issue is whether Plaintiff has plausibly alleged facts showing that coverage exists under the Policy."); Doc. 55 at 1 ("This property insurance case revolves around a single factual dispute—whether Ms. Singh used reasonable care to maintain heat in her property.")]. Defendant asserts that the Amended Complaint includes a single, conclusory allegation invoking the exception to the freezing exclusion. *See* [Doc. 53 at 7 (referring to ¶ 35 of the Amended Complaint)]. ASIC characterizes the remaining factual allegations as affirmatively demonstrative of Plaintiff's *lack* of reasonable care. [*Id.* at 9]. For example, Defendant argues that Plaintiff's allegations that she told Xcel to "put a stop on there" show that she "affirmatively requested Xcel stop providing gas and electric services to the vacant property before the alleged date of loss." [Doc. 48 at ¶ 15; Doc. 53 at 9]. ASIC then summarily concludes, "[n]o reasonable jury could find otherwise." [Doc. 56 at 2].

This Court respectfully disagrees. At the motion to dismiss stage, courts must consider well-pleaded factual allegations in the light most favorable to the Plaintiff. *See* *Casanova*, 595 F.3d at 1124. Plaintiff alleges that she spoke to Xcel on October 3, inquiring about the large overdue balance on the account associated with the Property. [Doc. 48 at ¶ 9]. Plaintiff asserts she made that call in order to ensure she would not be responsible for the unpaid balance, and that neither she nor the Property would "suffer any detriment" caused by the unpaid bill. [*Id.* at ¶ 12]. Plaintiff alleges that she made even more effort to ensure the overdue balance would not be a hinderance during the alleged November 2 phone call, in which she learned that her tenants did not "**put a stop** in there." [*Id.* at ¶ 15]. Plaintiff avers she understood Xcel's statement to mean that the

tenant had not stopped service "in their name." [*Id.*]. Ms. Singh asserts that by saying "we need to put a stop on there," she was simply asking Xcel to put a stop "on her tenant's account associated with" the Property, so that she would not be responsible for her tenant's unpaid utility bill. [*Id.* at ¶¶ 15–16]. Moreover, Plaintiff avers that Xcel continued providing services for another few months after the November 2 phone call, including while she made repairs to the Property in January. [*Id.* at ¶¶ 17–18]. Plaintiff alleges that Xcel ultimately turned services off at the Property due to the unpaid bill. [*Id.* at ¶¶ 26, 32].

Under Colorado law, whether coverage actually exists under an insurance policy is a question of fact. *See Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003). Likewise, whether an individual has exercised "reasonable care" under the circumstances is generally a question of fact. *Cf. Rine v. Isham*, 382 P.2d 535, 537 (Colo. 1963). And "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation omitted).

Regardless of whether or not they are the types of facts Defendant would expect, *see* [Doc. 53 at 8 ("The Amended Complaint contains no factual allegations describing what 'reasonable efforts' Plaintiff purportedly undertook. . . . [It] does not allege that Plaintiff: (i) arranged for utilities to be maintained at the property; (ii) paid for gas or electric services to the property between November 2, 2023 (when she agreed to stop services) and January 15, 2024 (the date of loss); (iii) installed space heaters or other heating devices; or (iv) shut off the water supply and drained the plumbing systems.")], this Court finds that Plaintiff's allegations are neither boilerplate nor conclusory. Accepting

all factual allegations in the Amended Complaint as true and drawing all reasonable inferences in Ms. Singh's favor, *see Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010), the Court finds that Plaintiff has included enough well-pleaded allegations in her Amended Complaint to plausibly allege that she took reasonable care to maintain heat in the Property and respectfully **DENIES** Defendant's Motion to Dismiss Claim I. Accordingly, the Court need not reach Plaintiff's alternative arguments to avoid dismissal. [Doc. 55 at 9–12].

## II. Bad Faith Claims

The Court next considers Defendant's second argument: Plaintiff has failed to allege sufficient facts to plausibly state claims for common law and statutory bad faith because Plaintiff's assertions that ASIC acted unreasonably are conclusory rather than grounded in fact. [Doc. 53 at 10–12, 14]. Plaintiff, for her part, argues that the Amended Complaint "supplies enough factual matter from which a jury could decide that ASIC's denial was based on a biased investigation which intentionally decontextualized Ms. Singh's communications with Xcel." [Doc. 55 at 14]. For the reasons set for the below, the Court respectfully concludes that Plaintiff has plausibly alleged unreasonable conduct to support both Claim II (common law bad faith) and Claim III (statutory bad faith).

Colorado law provides for two types of bad-faith claims arising out of an alleged breach of an insurance contract: (1) common law bad faith breach of an insurance contract; and (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, also referred to as "statutory bad faith." *Dowgiallo v. Allstate Ins. Co.*, No. 19-cv-03035-KMT, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020). While the two claims are distinct, "both common law and statutory bad faith claims require

a showing of unreasonable conduct." *McKinney v. State Farm Mut. Auto. Ins. Co.*, No. 20-cv-01651-CMA-KLM, 2021 WL 4472921, at *4 (D. Colo. Sept. 30, 2021). ASIC has only challenged whether Ms. Singh has adequately pleaded unreasonable conduct. [Doc. 55 at 2–3, 13–14; Doc. 56 at 6–8].

An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). "In Colorado, acting 'without a reasonable basis' has been construed to mean pursuing a groundless position that is not supported by credible evidence." *Cooper v. Shelter Gen. Ins. Co.*, 653 F. Supp. 3d 873, 878 (D. Colo. 2023) (quoting *Masters v. Safeco Ins. Co. of Am.*, No. 20-cv-00631-PAB-NRN, 2021 WL 4326269, at *5 (D. Colo. Sept. 23, 2021)). "[I]n other words, would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances." *TAF, L.L.C. v. Hartford Fire Ins. Co.*, 549 F. Supp. 2d 1282, 1289 (D. Colo. 2008) (quotation omitted).

The ultimate determination of whether an insurer acted reasonably is generally a question reserved for the jury. *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020); *see also Ridgeview Ctr. LLC v. Canopius US Ins. Inc.*, No. 18-cv-02850-REB-MEH, 2019 WL 2137394, at *4 (D. Colo. May 16, 2019) ("Typically, in cases like this, the parties employ experts to opine whether such conduct aligns with industry standards."), *report and recommendation adopted*, 2019 WL 13149200 (D. Colo. Sept. 17, 2019). The Court's duty at this stage is to determine whether Ms. Singh has adequately alleged facts to plausibly state a claim for relief. *See Hometown Cmty. Ass'n, Inc. v. Philadelphia Indem. Ins. Co.*, No. 17-cv-00777-RBJ, 2017 WL 6335656, at *8 (D.

Colo. Dec. 12, 2017) ("At the motion to dismiss stage, . . . it is not for the Court to decide whether [the defendant's] conduct was reasonable as a matter of law or . . . constituted bad faith. [The court] need only determine whether [the plaintiff] has provided sufficient facts to plausibly state its claims."); *Dubbs*, 336 F.3d at 1201 ("The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

In its Motion to Dismiss, ASIC labels the allegations in the Amended Complaint as "classic examples of impermissible legal conclusions . . . unsupported by any specific factual allegations." [Doc. 53 at 11]. ASIC further argues that Plaintiff failed to identify specific actions "that were unreasonable or violated industry standards," such as "fail[ing] to investigate relevant facts, ignor[ing] evidence favorable to Plaintiff, or rel[ying] on incorrect information." [*Id*. at 12]. This Court respectfully disagrees.

Plaintiff's allegations go beyond generic allegations of unreasonable conduct. In the Amended Complaint, Ms. Singh alleges that ASIC "acknowledged that the loss was caused by Xcel," "contacted Xcel on or about January 19, 2025," "confirmed that Xcel shut off utility service due to an outstanding utility bill from Ms. Singh's prior tenants [sic]," "noted that it looked like Ms. Singh attempted to maintain heat and power," and ultimately denied coverage after "learn[ing] that [Ms.] Singh had used the words 'put a stop' in regards to utility service." [Doc. 48 at ¶¶ 31–34]. She further avers that ASIC "willfully misconstrued" her communications with Xcel to mean she "intentionally sought to shut off utility services to her property," even though ASIC "knew [she] did not seek" to do so. [*Id.* at ¶ 46]. The Amended Complaint points out that ASIC knew Xcel shut off services because of the unpaid bill, not because of Ms. Singh's instruction to "put a stop on there,"

[*id.* at ¶¶ 32, 47, 48; Doc. 55 at 13], and that ASIC was aware that the heat did not shut off until nearly three months after Ms. Singh's instruction to "put a stop on there," [Doc. 48 at ¶ 15; Doc. 55 at 5]. Thus, Ms. Singh has included enough factual allegations to plausibly allege that ASIC acted unreasonably when it based its denial of coverage on Ms. Singh's order to "put a stop," when it knew that those words were directed at her tenant's Xcel account, not to ceasing all utilities to the Property.

Accordingly, this Court respectfully **DENIES** Defendant's Motion to Dismiss as to Claims II and III.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss the Amended Complaint [Doc. 53] is **DENIED**.

DATED: October 28, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge